# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

John R. Wilson

v.

Norfolk and Portsmouth
Belt Line Railroad Co.
and Ford Motor Co.

April 21, 2006

Case No. (Law) 05-451

BY JUDGE MARK S. DAVIS

This matter is before the Court on a "motion to enforce site inspection and for sanctions" filed by plaintiff, John R. Wilson, against defendant Norfolk and Portsmouth Belt Line Railroad Company (hereafter "NPBL"). Defendant NPBL objects to the site inspection and request for sanctions. The factual and procedural background of the case, discussion of the issues, and conclusions are set forth below.[1]

---

[1] Plaintiff Wilson was represented at the April 18, 2006, hearing by Willard J. Moody, Jr., Esquire, and E. Stanley Murphy, Esquire, with the firm of Moody, Strople, Kloeppel, Basilone, & Higginbotham, Inc. Defendant NPBL was represented by James L. Chapman, IV, Esquire, and W. Ryan Snow, Esquire, with the firm of Crenshaw, Ware & Martin, P.L.C. Defendant Ford was represented by Rebecca Herbig, Esquire, with the law firm of Bowman and Brooke, L.L.P.

## I. *Factual and Procedural Background*

Wilson alleges that he was injured on August 11, 2003, while riding on the side of a rail car that was passing very close to a fence line. He claims that the train was moving along the fence line near the Ford plant in Norfolk and that he struck his shoulder on a fence post that was leaning into the path of the train.

This Court previously considered a similar motion for a site inspection in this case, but it was unnecessary for the Court to address the motion because Norfolk Southern Railway Company (hereafter "Norfolk Southern"), the entity controlling the railroad track and surrounding injury site, and Wilson reached an agreement permitting Wilson to conduct a site inspection at the location where he alleges he was injured.

A more thorough review of the factual and procedural background of this case and the Court's ruling on a prior motion to place a rail car at the accident site are contained in this Court's October 14, 2005, Opinion and Order. *Wilson v. Norfolk & Portsmouth Belt Line RR.*, 69 Va. Cir. 153 (2005). Because the prior Opinion and Order thoroughly reviewed the background of this case, the Court will only address those facts relevant to its discussion of the issues raised in Wilson's motion.

## II. *Discussion*

Wilson filed his original "Motion for Entry Upon Premises and to Preserve Accident Site," pursuant to Va. Sup. Ct. R. 4:9, on May 9, 2005. NPBL responded that it did not own the property and therefore could not consent to entry and inspection. By notice of July 7, 2005, Wilson filed a motion to compel, noting that he served NPBL and Ford Motor Company (hereafter "Ford") with an Amended Request for Entry and Inspection" at track number three "and the land immediately adjacent thereto" and asserting that such land was either in the possession or control of both NPBL or Ford. Ford had previously granted Wilson's request for entry and inspection of the land on the west side of the fence line. NPBL responded that Ford owned the land on one side of the fence line, the west side, and that Norfolk Southern owned the property on the other side, the east side, and that, since "NPBL neither owns nor controls the property plaintiff seeks to enter . . . this Court is without authority to allow the inspection."

At the original August 5, 2005, hearing on Wilson's motion for a site inspection, NPBL conceded that Norfolk Southern owns a majority of NPBL,

but asserted that they were separate entities such that NPBL could not control the Norfolk Southern property at issue. NPBL stated that there was a written agreement with Norfolk Southern that controls NPBL's use of track three, but that NPBL only had authority to roll cars down the track not to permit site inspections of the track and surrounding property. By letter of August 30, 2005, Wilson advised the Court that Norfolk Southern had granted his counsel permission to "go upon the premises for the purpose of performing a site visit. . . ." Therefore, the Court did not address that issue and moved on to the other discovery disputes between the parties.

After the Court issued its October 14, 2005, Opinion and Order ruling on the remaining discovery disputes, Wilson and Norfolk Southern agreed upon a date for a site inspection of the location where Wilson alleges he was injured. When Wilson's attorneys and their expert witness arrived for the site inspection on March 16, 2006, they were advised that NPBL would be hosting the inspection, apparently on behalf of Norfolk Southern. A dispute subsequently arose during that inspection regarding the scope of the agreed site inspection. Such disagreement resulted in Wilson filing the motion currently before the Court.

Prior to the hearing, counsel for Wilson and NPBL participated in a telephone conference with the Court. At that time, Wilson and NPBL agreed upon a briefing schedule, and the Court asked that they address certain issues in such briefs. The parties filed their respective briefs. NPBL's brief contained an affidavit of James Veverka, the Director of Claims for Norfolk Southern. Veverka concedes in his affidavit that he spoke to Wilson's counsel and agreed to a site inspection where measurements and photographs would be taken, though he claims he understood the inspection would be limited to the specific location at which plaintiff claims he was injured.[2] He also states that NPBL is "not authorized to allow entry upon or inspection of Norfolk Southern property for non-business purposes without Norfolk Southern permission." NPBL's brief also contained an affidavit of Douglas Price, Senior Claims Agent at Norfolk Southern. He stated that he "authorized Norfolk and Portsmouth Belt Line Railroad Company representatives to control the site inspection to ensure compliance with the terms of the Court Order and the Norfolk Southern agreement allowing the inspection."

---

[2] Wilson, by way of an affidavit from his attorney, disputes Veverka's assertion that the inspection was limited to the immediate area of the fence post. NPBL objected to the Court's consideration of the attorney affidavit.

These issues were further addressed during oral argument on April 18, 2006. At the conclusion of the hearing, the Court delivered its tentative ruling from the bench. This Opinion and Order reflects and clarifies that ruling from the bench.

## A. *Relevance*

The first issue addressed at the April 18, 2006, hearing was the relevance of Wilson's request that NPBL permit his expert to take measurements beyond the immediate area surrounding the site of his injury. Wilson alleges that, at the time he was injured, he was standing on the side of a rail car that was passing close to a fence running along the side of the Ford plant. Norfolk Southern controls the track next to the Ford plant upon which the rail car was riding at the time of the alleged injury. Wilson further alleges that as that track (track three) proceeds down the fence line of the Ford plant, the space between the track and the fence narrows. Wilson claims that, as the train proceeded down the track, the narrowness created a dangerous condition known as a "close clearance." Wilson contends that one of the fence posts of this fence was bent over into the path of the train on which he was riding, and that his shoulder struck this fence post. At the hearing on his motion, Wilson argued that the area between the fence and track three created a dangerous close clearance even before the point where he encountered the fence post leaning into the path of the train. Therefore, Wilson, in essence, alleges that an already dangerous close clearance was made even more dangerous by the fence post leaning into the path of the train.

Wilson takes the position that his expert was restricted at the site inspection to taking measurements from the fence post with which he alleges he collided and the fence posts on either side of that post. NPBL asserts that Wilson is not entitled to more measurements because only the measurements regarding the actual fence post he struck, as well as one post on either side of that post, are relevant. Wilson argues that a larger area on either side of the fence post, approximately 250 feet, should be measured in order to determine what clearance he would have had between the fence and track as he leaned from the side of the train while it proceeded down the track. Wilson argues, among other things, that, on these facts, the unique context of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§51-60, where comparative negligence principles apply, and the "increasing risk" doctrine of *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 353 (1943), counsel in favor of permitting discovery of the areas surrounding the involved fence post. Wilson

states that he should be able to investigate the effect of the surrounding track on the clearance as the rail car approached the involved post so that the jury understands the risk.

The standard for discovery is set out in Va. Sup. Ct. R. 4:1(b)(1) and provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. It also provides that it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The jury in this case will have to determine, among other things, whether NPBL provided a safe workplace to Wilson and whether any failure to do so played any part in his injuries. If they conclude NPBL failed to provide a safe workplace and that such unsafe workplace played a part in Wilson's injuries, they will also have to determine whether Wilson was negligent and apportion such negligence. Wilson was riding on the side of a train, parallel to a fence that was becoming closer to the train as it moved along the fence line. Ultimately, Wilson allegedly encountered a fence post leaning in to the path of the train and collided with such fence post, injuring his shoulder. In order for a jury to understand what Wilson encountered as the train moved along this fence line, the Court can foresee that measurements of the distance between the track (and hence the train on such track) and the fence line would be helpful and relevant. Therefore, the Court concludes that Wilson's request to have a site inspection of the areas along track three (as represented by the requested "measurement area" photograph at page 11 of Wilson's memorandum of law) falls within the scope of discovery set out in Va. Sup. Ct. R. 4:1(b)(1).

B. *NPBL's Control*

Having addressed the first hurdle to Wilson's request, the Court must also determine whether the Virginia discovery rule relied upon by Wilson provides authority for the Court to grant his request. The Court must determine whether NPBL, as a "party" to these proceedings, has sufficient possession or control of track three on the Norfolk Southern-controlled property to permit entry and inspection. Va. Sup. Ct. R. 4:9(a) provides that "[a]ny party may serve on any other party a request . . . to permit entry upon designated land or other property in the *possession or control* of the party

upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 4:1(b)." (Emphasis added.)

There is a usage agreement between Ford, NPBL, and Norfolk Southern that governs the right of NPBL to use track three where Wilson alleges he was injured.[3] The usage agreement provides, among other things, that the railway companies, NPBL and Norfolk Southern, shall have "the right to operate over all or any portion of said tracks and to make such use thereof as does not unreasonably interfere with such operation of said tracks for the business of Ford." Wilson asks for permission to enter the area *surrounding* track three so that his experts can inspect, take measurements, and photograph between the track and the fence line. However, the scope of this request exceeds the scope of NPBL's authority pursuant to the usage agreement. The plain language of the usage agreement reflects that NPBL has only a right of limited access "to *operate* over all or any portion of said *tracks*," versus a right of general access to enter the area surrounding the tracks, and therefore does not have sufficient possession or control to provide Wilson with access to make the measurements he requests. (Emphasis added.) *See Santa Fe International Corp. v. Potashnick*, 83 F.R.D. 299, 301 (E.D. La. 1979) (discussing right of general access versus limited access in the context of Fed. R. Civ. P. 34(a)).

## C. *Non-Party Control*

Wilson also contends that the Court has the authority, pursuant to Va. Sup. Ct. R. 4:9(c), to order a non-party to permit entry upon his land for the purpose of inspection. The rule provides that a subpoena may be issued "to a person not a party … to produce the documents and tangible things (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form) designated and described in said request, and to permit the party filing such

---

[3] Although the usage agreement does not name Norfolk Southern, there appears to be no dispute that, through acquisition or other change, the rights under the usage agreement have inured to the benefit of Norfolk Southern. There also appears to be no dispute that Norfolk Southern has a right of general control over track three.

request ... to inspect . . . any tangible things which constitute or contain matters within the scope of Rule 4:1(b). . . ."

In the Court's October 15, 2005, Opinion and Order, it was noted that there is an unresolved question in Virginia as to whether the reference to "tangible things" in the just-referenced Va. Sup. Ct. R. 4:9(c), addressing production by a non-party, includes realty in light of the fact that realty is specifically included earlier in Va. Sup. Ct. R. 4:9(a), which involves discovery of a party. That rule, Va. Sup. Ct. R. 4:9(a), provides that "[a]ny party may serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 4:1(b)." Professor Bryson describes the issue in his text on Virginia civil procedure, as follows:

> The scope of production for discovery purposes of materials in the hands of non-party witnesses under Rule 4:9(c) is the same as that of Rule 4:9(a)(1), which deals with parties. It must be noted, however, that there is no mention in subsection (c) of entry upon and inspection of real property as there is in subsection (a). Does the reference to "tangible things" in subsection (c) include realty, or does the omission of realty specifically, while specifically mentioned in subsection (a), imply its exemption from production by persons not parties?

W. Hamilton Bryson, *Bryson on Virginia Civil Procedure*, § 9.08[2] (4th ed. 2005).

As a preliminary matter, the Court notes that no actual subpoena request was ever issued on Norfolk Southern pursuant to Va. Sup. Ct. R. 4:9(c). Wilson has addressed the question, in its brief, of whether the rule provides authority for the clerk of court to issue a subpoena duces tecum on Norfolk Southern to permit a site inspection. On the unique facts presented here, and noting that Norfolk Southern has stated its position on a site inspection in its affidavits, for purposes of this suit, the Court will treat Wilson's outstanding motions, and its briefing of this issue, as such a request pursuant to Va. Sup. Ct. R. 4:9(c). That rule also provides that "the party against whom such production is sought" may oppose such request. While NPBL has noted that Norfolk Southern has not appeared in the action to address this issue, the Court does not find such non-appearance problematic

on these unique facts since the clear language of the rule provides NPBL, as the party against whom production is sought, with standing to object to the issuance of such a subpoena.

The Court first observes that the prior rule of court addressing discovery, Rule 3:23(c), provided that "[o]n motion of any party, the court . . . shall enter an order requiring the adverse party or such *third person* . . . to make available for inspection, copying, or photographing any writing, chattel, or *real property* described in the order." (Emphasis added.) *See City of Portsmouth v. Cilumbrello*, 204 Va. 11, 14,129 S.E.2d 31, 33 (1963). However, current Va. Sup. Ct. R. 4:9(c), as noted above, does not include realty in its description of those things that a non-party may be required to produce during discovery. The difference between the old rule and the new rule suggests the possibility that the Virginia Supreme Court intended to remove from the discovery rules the right for a party to inspect the real property of a non-party. That difference, coupled with the fact that realty is specifically included in the scope of discovery available to a party under the current Va. Sup. Ct. R. 4:9(a) but is not included in the list of items a non-party may be required to produce under current Va. Sup. Ct. R. 4:9(c), suggests that the Virginia Supreme Court intended to exclude real property from the items that a non-party may be required to produce under the discovery rules. Therefore, the Court concludes that Va. Sup. Ct. R. 4:9(c) does not provide a party with the authority to require a non-party to permit inspection of its real property.

If a traditional pure bill of discovery is an available tool for obtaining such discovery, it would strengthen the analysis above concluding that the rule does not authorize such discovery. This is because it seems difficult to conclude that the Virginia Supreme Court would have intended to foreclose such discovery. However, it may well have attached such significance to the property interests implicated by such an entry that it intended for a party seeking such entry to have to file a separate equitable action and present evidence before such entry would be permitted. Requiring a separate action guarantees the procedural protections to the property owner that would not be present if an inspection order were summarily issued without a pre-issuance evidentiary hearing. Because the availability of a traditional pure bill of discovery bears upon the Court's conclusion that Va. Sup. Ct. R. 4:9(c) does not provide a party with authority to inspect a non-party's real property, the Court will address below the availability of the pure bill of discovery.

D. *Bill of Discovery*

The Court also asked the parties to discuss whether Wilson could utilize a traditional pure bill of discovery to seek entry on the Norfolk Southern-controlled track three. At common law, parties to law actions did not have to disclose to their adversaries facts within their knowledge, and as interested parties to the suit they were incompetent to testify in their own behalf. Therefore, to compel a disclosure of such facts, the adversary was forced to resort to a bill of discovery in equity. While the development of discovery statutes and rules rendered the bill of discovery largely obsolete, it is still an available tool of discovery in limited circumstances. T. Munford Boyd & J. Stuart Fitzhugh, Jr., *Burks Common Law and Statutory Pleading and Practice*, § 257 (4th ed. 1952); *see* Va. Code § 8.01-283. In a thorough review of such pure bills of discovery, the following has been said about their development:

> The equitable bill of discovery afforded the primary means of discovery in civil litigation prior to the adoption of the Federal Rules of Civil Procedure and state rules and statutes based thereon. The origin of the bill may be traced to old, rigid common-law rules under which an adverse party could not be compelled to produce documents for use in litigation. To cure this shortcoming, equity courts created the bill of discovery as an exercise of auxiliary jurisdiction to compel discovery in aid of actions at law. While state courts are divided as to whether the adoption of modern discovery rules and statutes has abrogated the bill of discovery, the majority view is that the bill survives in the absence of an express indication to the contrary in the governing discovery rules or legislation. In general, these courts continue to recognize the bill in limited circumstances in order to allow discovery when effective discovery may not be had by resort to applicable discovery rules and statutes. All courts which continue to recognize the bill of discovery require a showing of necessity to support the assumption of equity jurisdiction and conducting of discovery beyond that contemplated in the applicable rules and statutes.

Rupert F. Barron, *Existence and Nature of Cause of Action for Equitable Bill of Discovery*, 37 A.L.R.5th 645[2] (1996). Mr. Barron went on to note that

"[a]mong state courts recognizing the bill of discovery, there are splits of authority as to proper party defendants," with a number of courts having "adopted the view stemming from the early rule that the bill is generally available only against putative or present parties to the underlying litigation (present or anticipated), or those with some definable interest in the subject matter of the litigation." *Id.* Mr. Barron also notes that "several of these courts have recognized exceptions allowing for the conducting of equitable discovery against nonparties," while "[a] number of other courts have allowed the bill of discovery to be brought against nonparties as a general rule. . . ." *Id.*

Relying in part upon *Mullins v. Tench*, 25 Va. Cir. 425, 426 (Spotsylvania County 1991), NPBL asserts that a traditional pure bill of discovery is only available against a traditional "adversary" and that it is, therefore, not a method by which NPBL could seek entry on the disputed site in this case.

NPBL noted at the hearing that it did not speak for Norfolk Southern on this issue, and that such issue would presumably be open for discussion should Wilson seek a pure bill of discovery against Norfolk Southern. Clearly, Norfolk Southern is not a party to this proceeding and this analysis is without prejudice to Norfolk Southern's right to defend itself against any such equitable action. However, as noted above, the Court believes it appropriate to address this issue where it is a component of the Court's analysis in determining whether the current discovery rules of the Virginia Supreme Court permit such discovery or leave other avenues available for obtaining such discovery.

It is not surprising that the pure bill of discovery has been historically used only against adversaries since it pre-dated our current discovery rules. In other words, it was essentially the only discovery tool available prior to adoption of discovery rules. Therefore, one would expect that, in an era when discovery was generally disallowed, with the pure bill of discovery being the exception, the cases where pure bills of discovery were utilized were cases in which a party sought discovery from its adverse party (or party-to-be), rather than against a non-party. Therefore, while pure bills of discovery appear to have been traditionally used to obtain discovery from an adverse party, this common law equitable discovery tool does not appear to foreclose a party from seeking production/inspection of property controlled by a non-adverse non-party – particularly in a case such as this where such non-party has designated a party, such as NPBL, to control the site during an agreed inspection. *Cf. Lyons v. Miller*, 47 Va. 96 Gratt.) 427 (1849) (see also the monograph in the 1902 edition reviewing parties against whom a bill of

discovery is available and noting an agent as a proper defendant). As the South Carolina Supreme Court stated in the case of an estate administrator's action to inspect a non-adverse party's property where the decedent's accident took place:

> While modern discovery rules and liberal pleading requirements virtually eliminate the need to resort to an independent action in the form of an equitable proceeding for discovery, they do not totally displace the traditional equitable jurisdiction of the court to issue appropriate orders for independent discovery when effective discovery cannot otherwise be obtained and the ends of justice served. The equity powers of the Court may allow discovery when the Rules do not provide a mechanism.

*Wofford v. Ethyl Corp.*, 316 S.C. 75, 447 S.E.2d 187, 189 (1994) (citation omitted).

Defendants NPBL and Ford are parties to a usage agreement covering the site of the alleged injury. Non-party Norfolk Southern, another party to that usage agreement, apparently has the right to control that site at track three. Where the Virginia discovery rules do not provide authority for Wilson to enter the injury location and where NPBL oversaw the site inspection as an agent of Norfolk Southern and refused to allow Wilson to take measurements outside the limited area described above, Wilson is essentially foreclosed from obtaining the discovery to which he is entitled to prove his case.[4]

Therefore, since the Rules of the Virginia Supreme Court do not expressly prohibit entry on the property of a non-party, it appears that where all other requirements for issuance are met, such an equitable pure bill of discovery is theoretically available to accomplish that purpose. *See Stokes v. 835 N. Washington Street*, 141 Md. App. 214, 224, 784 A.2d 1142, 1149 (2001); *cf. Henshaw v. Commonwealth*, 19 Va. App. 338, 451 S.E.2d 415 (1994) (permitting inspection of crime scene under control of third-party in pending criminal case if relevance and materiality outweigh "the private citizen's constitutional right to privacy"). Without prejudice to any arguments Norfolk Southern might present if the matter were directly presented to this

---

[4] The Court notes that Va. Code § 8.01-376 provides the Court with discretion in any civil case to order that a jury be taken "to view the premises or place in question, or any property, matter or thing relating to the controversy between the parties."

Court, the traditional pure bill of discovery would appear to be available on facts similar to these.

The Court notes that the current Fed. R. Civ. P. 34(c) and Fed. R. Civ. P. 45 specifically provide for entry onto the land of a non-party as part of the discovery process. Furthermore, from 1970 to 1991 the federal rules specifically provided that such rules did not preclude an independent action against a person not a party for entry on land. *Stokes v. 835 N. Washington Street*, 141 Md. App. 214, 219, 784 A.2d 1142, 1145 (2001). However, prior to 1970, there appears to have been a split in authority among the federal courts as to whether a bill of discovery was available for such purposes, with some courts recognizing the common law equitable pure bill of discovery as an available tool to obtain entry onto the property of a non-adverse non-party for inspection purposes. *Lubrin v. Hess Oil*, 109 F.R.D. 403, 405 (D. V.I. 1986) (citing cases), *see K & Lee Corp. v. Scottsdale Ins. Comp.*, 1990 U.S. Dist. LEXIS 14895, *3 (E.D. Penn. 1990).

E. *Attorney's Fees and Sanctions*

Wilson has requested an award of attorney's fees and sanctions against NPBL pursuant to authority in the Rules of the Supreme Court of Virginia, Va. Sup. Ct. R. 4:12(a)(4), and Va. Code § 8.01-271.1. NPBL has asserted that it understood this Court's October 14, 2005, Opinion and Order to limit the scope of the site inspection to the fence pole on which Wilson alleges he was injured. However, the Court never substantively addressed Wilson's request to enter the site because, at the time of the hearing, Wilson had reached an agreement with Norfolk Southern to enter the site. While a comprehensive reading of the October 14, 2005, Opinion and Order reflects that conclusion, the Court can seen how it might be possible for there to be some confusion where only individual portions of the Opinion and Order denying Wilson's request that the Court order NPBL to place a rail car at the site for measurement purposes are read. Therefore, the Court denies Wilson's motion for attorney's fees and sanctions.

*Conclusion*

For the reasons stated above, the Court denies Wilson's motion for a site inspection and denies Wilson's request for attorney's fees and sanctions. The briefs of Wilson and NPBL addressing these issues are ordered filed. Since the parties have stated their positions on the record and/or in their

pleadings and since a court reporter was present at the April 18, 2006, hearing, the Court will dispense with the Va. Sup. Ct. R. 1:13 counsel endorsement requirement. It is so ordered.