## CIRCUIT COURT OF LOUDOUN COUNTY

In re Petition of
M&G USA Corp.
and M&G Polymers USA, L.L.C.

April 9, 2015

Case No. 85243-00

By Judge Thomas D. Horne

This is a petition seeking a pure bill of discovery and production of documents from Donald Berlin and Investigative Consultants.

M&G USA is a Delaware corporation with a principal place of business located in West Virginia. M&G Polymers USA is a Delaware limited liability company with a principal place of business located in Ohio and a wholly owned subsidiary of M&G USA. Both petitioners are described in the petition as major worldwide producers of polyethylene resin. INVISTA North America, S.a.r.l., has been granted leave to intervene in these proceedings. INVISTA, S.a.r.l., is a competitor of petitioners and has been reported to be engaged with petitioners in litigation over alleged patent infringements in various forums worldwide. The parties from whom discovery is sought, Donald Berlin and Investigative Consultants, are alleged to be involved in international intelligence gathering.

Petitioners are defendants in an action commenced in the State of Delaware initiated by INVISTA. It is suggested that Donald Berlin and Investigative Consultants are in the possession of information material to the ongoing litigation between INVISTA and M&G. The discovery requested by the instant pure bill arises out of electronic mailings, in which it is alleged Berlin and ICI, acting as agents of INVISTA, sought to obtain confidential client information from a M&G affiliated company, M&G Polymer Italia, S.p.a. It is suggested that, beginning in December 2011, Berlin and ICI sought to deceive Raffaella Sena, who was at the time the Marketing Manager for the PoliProtect resin business of a M&G affiliate company, M&G Polimeri Italia, S.p.a., into disclosing the customer information by use of subterfuge. Ms. Sena was able to deflect the overtures reflected in deceptive emails made by Berlin and ICI.

Upon learning of the alleged deceptive nature of the emails, petitioners began a review of its computer system and security procedures to determine whether there was a security breach. Petitioners state that they "hired a computer forensic firm to investigate the computer network compromise, which was unable to confirm or deny Mr. Berlin's attacks on its computer system or the extent of Mr. Berlin's attempts to infiltrate the M&G computer network." In December 2012, INVISTA commenced an action in Italy that resulted in the seizure of M&G resin products being transported by M&G customers at the Italian border. It is the belief of petitioners that this seizure, alleged by petitioners to later be held illegal by the Italian courts, evidences a connection with the activities of Mr. Berlin to secretively obtain customer information in order to interfere with their relationship with M&G.

Specifically, petitioners seek, by way of the pure bill of discovery, to have this Court:

> authoriz[e] depositions of Investigative Consultants, Inc., and Donald Berlin [both subject to the jurisdiction of this court], as well as produc[e] documents, sufficient to establish (1) what further means of obtaining information from M&G were employed by Investigative Consultants, Inc., and Berlin; (2) the exact steps taken by ICI and Berlin in obtaining information from M&G; (3) the complete results of their efforts and what confidential or proprietary information, if any, was obtained; (4) the names of third parties with whom ICI and Berlin worked in the course of contacting M&G; and (5) the final disposition of the information obtained by ICI and/or Berlin.

Berlin, ICI, and INVISTA have challenged the petitioner's entitlement to relief, describing the relief sought in this Court as no more than a "fishing expedition" without a basis in fact and otherwise an unwarranted attack on the privileged relationship existing between INVISTA and its agents.

A pure bill of discovery is an infrequently used procedure in contemporary practice. The utility of the pure bill has in large measure been subsumed by modern rules of practice that provide for more extensive discovery than is obtained by a pure bill. As counsel for the intervenor noted, Va. Sup. Ct. R. 4:1(b)(1) provides that parties may obtain discovery:

> regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... [i]t is not ground for objection that the information sought will be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In contrast to the general rules of discovery in modern practice, a pure bill of discovery is designed to obtain evidence material to the pursuit of the action at law. Although there has been a merger of law and equity in civil cases, such a merger has not brought about the demise of equitable principles and remedies, such as the one providing for a pure bill. *See Henderson v. Ayres & Hartnett*, 285 Va. 556, 740 S.E.2d 518 (2013). In the words of a leading contemporary scholar in the area of Virginia jurisprudence, W. Hamilton Bryson has observed, "Discovery ... has always been a part of English equity practice, and it has been shown how pure bills of discovery in equity evolved to provide indirect discovery for use in common law disputes.... . However, because of the broad scope of the rules, the statutory remedies were no longer generally needed." W. Hamilton Bryson, *Bryson on Virginia Civil Procedure*, § 9.06(1)(a) (4th ed. 2005).

And so it is that this petition challenges the Court to find the appropriate equitable principles with which to measure the adequacy of the petition and accompanying affidavit to grant the relief sought. Because of a lack of current controlling case law, the Court must seek guidance in writings from an earlier time and more recent commentators.

In a late 19th century treatise on equity practice and procedure, a commentator, in reviewing the differences between a bill of discovery and one containing a prayer for relief, noted the following:

> [a] bill of discovery must state the matter touching which discovery is sought, the interest of the plaintiff and defendant in the subject, and facts and circumstances upon which the plaintiff to require the discovery from the defendant was founded ... and it may also pray for the equitable assistance of the court, which is merely consequential upon the prayer for discovery; but it should not pray general relief, for then it is a bill of relief.... . If relief is prayed for, it must appear by affidavit that the party has not, without a discovery, the means of proving the fact or writing in question; for it is on that circumstance that the jurisdiction of the court to give relief is founded. But a bill for discovery merely requires no such affidavit, nor is it needful that the discovery should be indispensable to the party's case. He is entitled to it if he states and shows that it is material evidence although merely cumulative, but, if it is not material, the bill is demurrable.

R. T. Barton, *Pleading and Practice in Courts of Chancery*, 306-07 (1881).

Thus, to be entitled to relief by way of a pure bill of discovery in equity, the petitioner must demonstrate: (1) that the discovery sought is material to the case, (2) that, without the discovery sought, he is unable to prove the facts material to the case, (3) that a good faith basis exists for the request, and (4) that probable cause exists to believe the petitioner has a cause of

action for either or both a trade secret violation or tortious interference with business relations.

The last requirement regarding probable cause is not specifically stated in Virginia jurisprudence. However, the United States Supreme Court, in analyzing a bill of discovery in aid of an action at law concerning federal law, held, "The court may decline to open the defendant's records to the scrutiny of a competitor posing as a suitor, if the suit has been begun without probable cause or as an instrument of malice." *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 696-97, 53 S. Ct. 736, 77 L. Ed. 1449 (1933). Thus, the United State Supreme Court's ruling in Sinclair Refining demonstrates that a showing of probable cause serves as an indispensable element to providing relief by way of a pure bill of discovery. However, even if a showing of probable cause is not required, the Court finds that probable cause has been met in this case, as discussed *infra* in more detail.

Crucial to the success of one seeking relief by way of a pure bill of discovery is a showing of materiality in the support of the pursuit or defense of an action. *M'Farland v. Hunter*, 35 Va. (8 Leigh) 489 (1836); *Childress v. Morris*, 64 Va. (23 Gratt.) 802 (1873). Furthermore, in the case of a pure bill of discovery:

> it is not necessary to allege that only by discovery can the plaintiff sustain his demand. In such a case, full relief of equity is not asked, but only its aid to make the applicant stronger in a court of law. But where the complainant asks a court of equity for both discovery and relief and his demand is proper for the law court, and he seeks to transfer it to a court of chancery, he must show that only by discovery can he recover.

*Larkey v. Gardner*, 105 Va. 718, 720, 54 S.E. 886 (1906).

Should the petitioner fail to show either the materiality or evidentiary value of the information sought to be discovered, then the bill cannot be sustained. In making a determination as to the materiality of the evidence sought to be discovered, petitioners are required to demonstrate a need "to support the assumption of equity jurisdiction and conducting discovery beyond that contemplated in the applicable rules and statutes." *Wilson v. Norfolk & Portsmouth Belt Line R.R.*, 70 Va. Cir. 383, 391 (City of Portsmouth 2006).

In support of their request, petitioners have included a declaration by Delane Richardson. This declaration conforms to the requirements of Va. Code Ann. § 8.01-4.3. Read together, the petition and declaration seek discovery of material evidence critical to support actions for a violation of the Uniform Trade Secrets Act and tortious interference with business relations.

In opposition to the petition, counsel have called attention to the test applied by the courts of Connecticut and Federal courts in determining materiality. Under the rule to be applied in these forums, the Court would be required to evaluate the materiality, necessity, and evidentiary value of the information contained in the petition with a probable cause standard. *Journal Publishing Company, Inc. v. Hartford Courant Co.*, 261 Conn. 673, 804 A.2d 823 (2002). Thus, should the Court find the petition to not be procedurally defaulted, it would be required to determine whether petitioners have alleged sufficient facts that would justify a finding of probable cause that petitioners suffered damage as a result of either or both a trade secret violation or an interference with business relations.

In regard to the Virginia Uniform Trade Secrets Act ("VUTSA"), the Supreme Court of Virginia has held:

> In order for a plaintiff to establish that such information has been the subject of a trade secret violation, two statutory elements must be proved, namely, the existence of a "trade secret" and its "misappropriation" by the defendant. Thus, if a plaintiff fails to prove either required element, the plaintiff is not entitled to relief under the Act.

*MicroStrategy, Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580 (2004) (*citing* Va. Code §§ 59.1-336 through 59.1-338). In regard to tortious interference with business relations, the Supreme Court of Virginia has held, "The elements required for a *prima facie* showing for claim for tortious inference with an existing contract are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor, (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted. *Durrette Bradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145, 670 S.E.2d 704 (2009); *see also Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832 (1987).

In this case, the petitioner argues: (i) that an attempted security breach (ii) which was not validated (iii) affected confidential material. As a result, petitioner asserts that (iv) discovery may reveal whether a breach occurred and the extent of damages related thereto, and (v) discovery may yield evidence related to each of the elements of the torts alleged and the extent of damages, if any.

In the law of torts, probable cause is defined as "[a] reasonable belief in the existence of facts on which a claim is based and in the legal validity of the claim itself." *Black's Law Dictionary* 1321 (9th ed. 2009). Utilizing a probable cause standard to the instant pleading, the Court finds that, when considering the totality of the petition and accompanying declaration and papers, including reasonable inferences drawn therefrom, the probable

cause standard has been met. An attempt was made to obtain confidential client information through surreptitious means. A forensic review could not determine whether other electronic data had been compromised. A client of the petitioners was stopped as a result of a report to Italian customs. Absent discovery, the petitioners have no other means to obtain information as to the extent set forth in the above intrusion nor the ability to establish a nexus to damages resulting from the tortious activity. In light of the pleadings, it is certainly reasonable to conclude that the alleged behavior constitutes a violation of the Uniform Trade Secrets Act and tortious interference with business relations. Accordingly, this Court finds that the petitioners have presented sufficient factual allegations that would support tort recovery, excepting the issue of damages.

Discovery of information relative to actions at law that is necessary, material, and not obtainable by other means is the *raison d'etre* of the pure bill. A bill of discovery is intended to provide a litigant with what he or she requires to pursue an action. For this reason, such bills are favored in equity and are granted unless some well-founded reason exists to deny the bill.

Accordingly, the Court will grant the relief sought in the petition. However, this is without prejudice with respect to any privilege claims that may be asserted and may be decided at a later time.